IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |
|---|---|
| JAMAL LARGIE, | * |
| Plaintiff, | * |
|  | * |
| v. | * CIVIL NO.: WDQ-11-2765 |
|  | * |
| JEFFREY GERRES, *et al.*, | * |
| Defendants. | * |
|  | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Jamal Largie sued five Harford County sheriff's deputies[1] (the "Defendants") for battery and other claims.  For the following reasons, the Court will deny the Defendants' motion to dismiss the amended complaint.[2]

I. Background[3]

On July 29, 2009, Deputies Gerres and Wehrle responded to a 911 call about a suspicious van parked on Penthurst Court in Abingdon, Maryland.  Am. Compl. ¶¶ 11-12.  Before they arrived, the caller told the dispatcher that the van had left the scene.

---

[1] The Defendants are Deputies Jeffrey Gerres, Thomas Wehrle, Christopher Tolliver, and Wilbert Adams, and Corporal David Kopp.

[2] The Court will deny as moot the motion to dismiss the original complaint, ECF No. 5.

[3] For the motion to dismiss, the well-pled allegations in Largie's amended complaint are accepted as true. *See Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011).

Am. Compl. ¶ 12.

Later that night, Deputies Gerres and Wehrle saw Largie in a minivan leaving a convenience store on Abingdon Road.  Compl. ¶ 13.  Mistaking the van for the one identified in the 911 call, the deputies followed Largie as he drove home.  *Id.*  Largie did not realize that he was being followed until he pulled into his driveway.  *Id.*

Deputies Gerres and Wehrle "drew their weapons without provocation" and demanded that Largie and his passenger get out of the van.  Am. Compl. ¶ 14.  Largie immediately obeyed and "was taken to the ground by [Deputy] Gerres, who proceeded to kick and punch [him]" as Deputy Wehrle guarded Largie's passenger.  Am. Compl. ¶¶ 15-17.

Deputies Tolliver and Adams "arrived as backup and joined the fray," punching and kicking Largie.  Am. Compl. ¶ 17. Largie did not "physically resist[] or assault[]" the deputies. *Id.*

Corporal Kopp arrived and immediately used his taser on Largie.  Am. Compl. ¶ 18.  While Largie was "still suffering the effects" of the taser, Deputy Gerres struck him repeatedly with a baton.  *Id.*

Largie suffered "severe facial fractures."  Am. Compl. ¶ 18.  He was taken into custody, but received no medical care. Am. Compl. ¶ 19.

Deputy Gerres drafted a statement of probable cause, and Largie was charged with assault on a police officer, resisting arrest, and failing to obey a lawful order. Am. Compl. ¶ 20. On October 19, 2010, the State placed the charges of assault and resisting arrest on the inactive docket, and Largie pled guilty to failing to obey an order to stop his van on Abingdon Road. *Id.* Largie received probation before judgment. *Id.*

On August 12, 2009, Largie's attorney asked the Maryland treasurer to investigate his claim under the Maryland Tort Claims Act (the "MTCA"). Am. Compl. ¶ 2; Opp'n to Mot. to Dismiss, Ex. 1. The letter asserted that Largie had been "seriously and permanently injured" by Deputies Gerres, Wehrle, Kopp, Adams, "and other members of the Harford County Sheriff's Department" on July 29, 2009, at Largie's home. *Id.* Specifically, counsel alleged that Largie had been "wrongfully detained, assaulted, battered, arrested, and criminally prosecuted," and had incurred more than $23,000 in medical bills. *Id.*

On August 26, 2011, Largie sued each deputy "independently and in his official capacity," alleging battery, false arrest and imprisonment, conspiracy, and violations of his rights under the Fourth Amendment[4] and the Maryland Declaration of Rights.

---

[4] Largie brought his Fourth Amendment claim under 42 U.S.C. § 1983, which provides a remedy against any person, who acting

ECF No. 1.   On January 11, 2012, the Defendants moved to dismiss.   ECF No. 5.

On January 25, 2012, Largie amended the complaint, withdrawing the claims of false arrest and false imprisonment. ECF No. 8.   On February 8, 2012, the Defendants moved to dismiss the amended complaint.   ECF No. 10.   On February 24, 2012, Largie opposed the motion.   ECF No. 11.   On March 9, 2012, the Defendants filed a reply.

II. Analysis

A. Standard of Review

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. A Rule 12(b)(6) motion tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."   *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001).

Although Rule 8's notice pleading requirements are "not onerous," the plaintiff must allege facts that support each

under color of law, deprives another of constitutional rights.

4

element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To present a facially plausible complaint, a plaintiff must do more than "plead[] facts that are 'merely consistent with' a defendant's liability"; the facts as pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 679 (*quoting* Fed. R. Civ. P. 8(a)(2)).

"[W]he[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not show[n]--that the pleader is entitled to relief." *Id.* (citation and internal quotation marks omitted).

The Court "should view the complaint in a light most favorable to the plaintiff," and "accept as true all well-pleaded allegations," *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993), but the Court is "not bound to accept as true a legal conclusion couched as a factual allegation,"

*Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "allegations that are mere[] conclus[ions], unwarranted deductions of fact, or unreasonable inferences," *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (citation and internal quotation marks omitted).

B. The Defendants' Motion to Dismiss

The Defendants argue that the Court must dismiss Largie's state law claims because he did not comply with the notice requirements of the MTCA, and the deputies are shielded by public official immunity.  Mem. in Supp. of Mot. to Dismiss 2-5, 8-10.  The Defendants further contend that they enjoy qualified immunity on the § 1983 claim, Largie's claim under the Maryland Declaration of Rights is too vague, and Maryland does not recognize the tort of civil conspiracy.  *Id.* at 6-8, 10-13.

1. The MTCA's Notice Requirements

The MTCA provides a limited waiver of sovereign immunity and is "the sole means by which the State of Maryland and its personnel may be sued in tort."[5]  This waiver is conditioned upon, *inter alia*, the injured party filing notice of his tort claim with the Maryland treasurer within one year after the injury.  Md. Code Ann., State Gov't § 12-106(b)(1).  The purpose of the notice requirement is to allow the government to "investigate the claim and respond either by settlement or

---

[5] *Swagler v. Sheridan*, ---F. Supp. 2d.---, Case No. RDB-08-2289, 2011 WL 2746649, at *23 (D. Md. July 12, 2011).

defense,"[6] and to "better predict liability and make appropriate budgetary decisions."[7]

A plaintiff's notice must contain a "concise statement of facts . . . set[ting] forth the nature of the claim, including the date and place of the alleged tort," "demand specific damages," and "state the name and address of each party."  Md. Code Ann., State Gov't § 12-107(a).  Maryland courts have recognized that "it is often difficult if not impossible to identify all possible details of a claim" by the filing deadline,[8] and the general assembly intended the MTCA to be construed broadly to ensure that "injured parties will be ensured a remedy."[9]  Accordingly, a plaintiff need only show "substantial compliance" with the notice requirement, that is, "timely notice of facts and circumstances giving rise to the claim."[10]

The Defendants argue that counsel's August 12, 2009 letter

---

[6] *Conaway v. State*, 600 A.2d 1133, 1140 (Md. Ct. Spec. App. 1992) (internal quotation marks omitted).

[7] *Rios v. Montgomery Cnty.*, 872 A.2d 1, 16 n.13 (Md. 2005).

[8] *Conaway*, 600 A.2d at 1139.  When *Conaway* was decided, a plaintiff had only 180 days to file a claim.  *Id.*

[9] *Condon v. Univ. of Md.*, 632 A.2d 753, 760 (Md. 1993).

[10] *Condon*, 632 A.2d at 760.  *See also Conaway*, 600 A.2d at 1140-41 (although plaintiff prisoner had not demanded damages in his notice, he had substantially complied with the MTCA because the state had not shown that it was "in any way handicapped in investigating [his] claim because of [the] deficiency").

to the Maryland treasurer failed to comply with the MTCA notice requirements because it did not mention Deputy Tolliver or demand specific damages. Mem. in Supp. of Mot. to Dismiss 5. Largie counters that he substantially complied with the requirements because he stated that he had incurred more than $23,000 in medical bills, and noted that "other members of the Harford County Sheriff's Department" were at fault.[11]

Largie substantially complied with the MTCA's notice requirements. By specifying the amount of his medical bills--and noting that other, unnamed deputies may have contributed to his injuries--Largie provided sufficient information to allow the State to investigate his claim, predict liability, and "make appropriate budgetary decisions." *See Rio*, 872 A.2d at 16 n.13; *Conaway*, 600 A.2d at 1140. Moreover, the Defendants have not shown that the State was "in any way handicapped in investigating [Largie's] claim because of [the] deficienc[ies]" of his notice. *See Conaway*, 600 A.2d at 1140-41. Thus, the Court will deny the Defendants' motion to dismiss for failure to comply with the MTCA notice requirements.

2. Section 1983 and Qualified Immunity

"The doctrine of qualified immunity protects police

---

[11] Mem. in Opp'n to Mot. to Dismiss 7-9. Largie contends that, when he filed his MTCA notice, he did not have access to sheriff's office reports that would have identified each of the defendants. *Id.* at 9 n.4.

officers and public officials from claims of constitutional violations for reasonable mistakes as to the legality of their actions."[12]  Under this doctrine, the Court must dismiss a § 1983 claim against a law enforcement officer unless (1) "the allegations, if true, substantiate a violation of a . . . constitutional right," and (2) "the right was clearly established such that a reasonable person would have known [that] his acts or omissions violated that right." *Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011) (internal quotation marks omitted).

"It is clearly established that citizens have a Fourth Amendment right to be free from unreasonable seizures accomplished by excessive force." *Valladares v. Cordero*, 552 F.3d 384, 388 (4th Cir. 2009).  "An officer's actions are not excessive if they are 'objectively reasonable' in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation."[13]

Determining reasonableness "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing

---

[12] *Merchant v. Bauer*, ---F.3d---, Case No. 11-1392, 2012 WL 1447926, at *4 (4th Cir. Apr. 26, 2012) (internal quotation marks omitted).

[13] *Waller v. City of Danville*, 212 F. App'x 162, 169 (4th Cir. 2006) (*quoting Graham v. Connor*, 490 U.S. 386, 397 (1989)) (alterations in original).

governmental interests at stake." *Graham*, 490 U.S. at 396
(internal quotation marks omitted). The "facts and
circumstances of each particular case" must be examined, and
consideration should be given to: (1) "the severity of the crime
at issue," (2) "whether the suspect pose[d] an immediate threat
to the safety of the officer or others," and (3) "whether he
[was] actively resisting arrest or attempting to evade arrest by
flight." *Id.* "[M]ore force may be reasonably used in
apprehending a violent criminal than a jaywalker." *Kopf v.
Skyrm*, 993 F.2d 374, 379 (4th Cir. 1993). The ultimate question
is "whether the totality of the circumstances justified [the]
particular . . . seizure." *Graham*, 490 U.S. at 396.

The Defendants argue that they are entitled to qualified
immunity because, by pleading guilty and withdrawing his claims
of false arrest and imprisonment, Largie has recognized that
"probable cause existed to arrest and detain him after he failed
to obey lawful orders of law enforcement officials in the middle
of the night." Mem. in Supp. of Mot. to Dismiss 7. Largie
counters that the officers are not immune because he has alleged
that he "was seized and beaten . . . after he had acquiesced to
their show of authority." Mem. in Opp'n to Mot. to Dismiss 12.

The Defendants have not shown that they are entitled to
qualified immunity. Largie has alleged that he was unaware that
Deputies Gerres and Wehrle were following him; once home, he

immediately obeyed the deputies' order to get out of the van but was "taken to the ground," beaten, and tased; and he suffered "severe facial fractures," for which he incurred more than $23,000 in medical bills  Am. Compl. ¶¶ 13-18; Opp'n to Mot. to Dismiss, Ex. 1.  The only crime to which he pled guilty was the relatively minor offense of failing to obey an order to stop his van.  Am. Compl. ¶ 20.  That the deputies might have had probable cause to arrest Largie for this offense does not establish that they used reasonable force in doing so.  "Even when a police officer has probable cause to . . . arrest, he still may have committed an unreasonable seizure if, judging from the totality of circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest."[14]  Largie has alleged that the Defendants used unreasonable force in arresting him.  *See Graham*, 490 U.S. at 396.  Accordingly, qualified immunity does not compel dismissal of Largie's § 1983 claim.

3. Public Official Immunity Under Maryland Law

A law enforcement officer is entitled to public official immunity under Maryland law when he commits a tort, without

_____

[14] *Brooks v. City of Aurora*, 653 F.3d 478, 486 (7th Cir. 2011) (internal quotation marks omitted).  *Accord Raiche v. Petroski*, 623 F.3d 30, 37-38 (1st Cir. 2010) ("the reasonableness of an arrest depends not only on *when* it is made--e.g., after probable cause has accrued--but also on *how* it is carried out") (emphasis in original) (internal quotation marks omitted) (*citing Graham*, 490 U.S. at 395).

malice, while performing discretionary acts.  *See D'aoust v. Diamond*, 36 A.3d 941, 962 (Md. 2012); *Davis v. Muse*, 441 A.2d 1089, 1092 (Md. Ct. Spec. App. 1982).  Malice is characterized by "evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud."  *Lee v. Cline*, 863 A.2d 197, 311 (Md. 2004).  Public official immunity does not shield intentional torts or state constitutional violations.[15]

The Defendants argue that public official immunity shields them from Largie's state law claims because they were acting within "the scope of their law enforcement functions during the events in question," and Largie's "[b]oilerplate allegations of ill will or malice are not sufficient" to subject them to liability.  Mem. in Supp. of Mot. to Dimiss 8-10.  Largie counters that he has alleged state constitutional violations, intentional torts, and facts showing the Defendants' actual malice.  Mem. in Opp'n to Mot. to Dismiss 16-19.

Battery and conspiracy to commit battery are intentional torts to which public official immunity does not apply.[16]

---

[15] *Houghton v. Forrest*, 989 A.2d 223, 228 (Md. 2010); *Lee*, 863 A.2d at 305.  *See also Lovelace v. Anderson*, 785 A.2d 726, 734 (Md. 2001) ("public official immunity generally applies only to negligent acts").

[16] *See Houghton*, 989 A.2d at 227-28 (describing battery as an intentional tort).  Conspiracy to commit battery is "a combination of two or more persons by an agreement and understanding to accomplish" battery.  *See Shenker v. Laureate Educ., Inc.*, 983 A.2d 408, 428 (Md. 2009) (internal quotation

Largie's claim under the Maryland Declaration of Rights is a state constitutional claim that is also outside the doctrine of public official immunity. *See Lee*, 863 A.2d at 305.  Largie has alleged that the Defendants acted maliciously by repeatedly kicking and punching him, tasing him, and beating him with a baton.  Am. Compl. ¶¶ 15-18; *see Lee*, 863 A.2d at 311.  Because Largie has alleged malice, and state constitutional and intentional tort claims, public official immunity does not compel dismissal.

4. Maryland Declaration of Rights

Count III of the amended complaint is captioned, "Violation of Maryland State Declaration of Rights Established by Way of Articles 24 and 26."  Am. Compl. 9.  In this count, Largie asserts that the Defendants violated "certain State rights established by . . . the Maryland Declaration of Rights, including but not limited to Articles 24 and 26."  Am. Compl. ¶ 33 (internal quotation marks omitted).  He further asserts that he was deprived of "his rights to the security in his person and freedom from arrest except upon probable cause," "his right not to be deprived of liberty without due process of law," and the "right not to be subjected to excessive force during the course of an ongoing arrest."  Am. Compl. ¶ 34.

---

marks omitted); *cf. Moscarillo v. Prof'l Risk Mgmt. Servs., Inc.*, 921 A.2d 245, 253 (Md. 2007) (referring to conspiracy to defraud as an intentional tort).

13

The Defendants argue that Largie has not provided "fair notice of which provision of the Maryland Constitution they have supposedly violated and, therefore, Count III fails to state a claim." Mem. in Supp. of Mot. to Dismiss 11.

Largie's allegations are sufficient to state a claim under Articles 24 and 26 of the Maryland Declaration of Rights. Article 24 protects substantive due process rights, and Article 26 protects the right against unreasonable searches and seizures.[17] "[A] claim of excessive force under Article 24 is analyzed in the same manner as if the claim were brought under Article 26,"[18] which is construed *in pari materia* with the Fourth Amendment.[19] Because Largie's § 1983 claim sufficiently alleges a Fourth Amendment violation, *see supra* Part II.B.2, he has sufficiently alleged violations of Articles 24 and 26 of the Maryland Declaration of Rights. Accordingly, the Court will deny the Defendants' motion to dismiss Count III.[20]

---

[17] *See Canaj, Inc. v. Baker & Division Phase III, LLC*, 893 A.2d 1067, 1097 (Md. 2006); *Carter v. State*, 788 A.2d 646, 652 (Md. 2002).

[18] *Randall v. Peaco*, 927 A.2d 83, 89 (Md. Ct. Spec. App. 2007).

[19] *Carter*, 788 A.2d at 652.

[20] If Largie pursues claims under any other provision of the Maryland Declaration of Rights, he must amend his complaint to allege specific facts that "allow[] the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 678.

5. Civil Conspiracy

In Count IV ("Civil Conspiracy"), Largie alleges that the Defendants "conspired amongst themselves . . . to detain and . . . manufacture the circumstances giving rise to [his] prolonged beating." Am. Compl. ¶ 37. He further asserts that the Defendants "conspired with the other members of the Harford County Sheriff's Department . . . to obfuscate their errant and unconstitutional behavior." Am. Compl. ¶ 38.

The Defendants argue that Maryland does not recognize the tort of civil conspiracy, and Largie has "failed to allege sufficient facts to support his claim." Mem. in Supp. of Mot. to Dismiss 11-13. Largie counters that he has properly pled conspiracy as an independent tort because he has alleged other, related causes of action, and he has "adequately set forth the factual basis to support his claim . . . that the Defendant officers acted in concert to beat him without provocation." Mem. in Opp'n to Mot. to Dimiss 19-21.

A claim for civil conspiracy requires the plaintiff to show: (1) "a confederation of two or more persons by agreement or understanding," (2) to commit "some unlawful or tortious act," and (3) "[a]ctual legal damage . . . to the plaintiff." *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 284 (Md. 2007) (internal quotation marks omitted). Thus, conspiracy is "not a separate tort capable of independently sustaining an award of

damages in the absence of other tortious injury to the
plaintiff." *Id.* When the plaintiff "has alleged a tortious act
upon which the conspiracy claim could be based," however, "[t]he
question . . . is, whether the [plaintiff] ha[s] pled adequate
facts to allege that the [defendants] worked in concert to carry
out [that tort]." *Id.*

Largie has stated a claim for civil conspiracy. He has
alleged separate counts of battery and constitutional violations
"upon which the conspiracy claim could be based," and facts
showing that the Defendants worked in concert to violate his
constitutional rights by beating, kicking, punching, and tasing
him. *See Lloyd*, 916 A.2d at 284. Because "[c]onspiractors do
not voluntarily proclaim their purposes," a plaintiff need only
allege facts that "the parties were acting together
understandingly in order to accomplish" the wrongful act.[21] Such
an agreement may be inferred from assertions that a law
enforcement officer restrained an arrestee while his colleagues
kicked him, or that he called for backup, struck the arrestee,
looked on while his colleagues continued beating him, and failed
to intervene.[22] Largie has alleged that Deputy Gerres kicked and

---

[21] *W. Md. Dairy v. Chenowith*, 23 A.2d 660, 664 (Md. 1942), *quoted
in Hoffman v. Stamper*, 867 A.2d 276, 291 (Md. 2005).

[22] *See Hafner v. Brown*, 983 F.2d 570, 577-78 (4th Cir. 1992)
("Acquiescence can amount to a conspiracy agreement when, as

punched him as Deputy Wehrle guarded Largie's passenger,
Deputies Tolliver and Adams "arrived as backup" and punched and
kicked him, Corporal Kopp arrived and used his taser on Largie,
and Deputy Gerres struck Largie repeatedly with a baton.  Am.
Compl. ¶¶ 15-18.  From these facts, one could reasonably infer
that the Defendants "were acting together understandingly" to
beat Largie in violation of his constitutional rights.  *See W.
Md. Dairy*, 23 A.2d at 664.  Accordingly, the Court will deny the
Defendants' motion to dismiss Largie's civil conspiracy claim.

III. Conclusion

For the reasons stated above, the Court will deny the
Defendants' motion to dismiss the amended complaint.

_5/30/12_
Date

_Charles, Jr._
William D. Quarles, Jr.
United States District Judge

---

here, one police officer watches an open breach of the law and
does nothing to seek its prevention.").